EK:MEC:mec
F.#2006RO1666
INFORMAT.DRISCOLL



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    -against-

JOSEPH DRISCOLL,

      Defendant.

- - - - - - - - - - - - - - - X

I N F O R M A T I O N

Cr. No. 08-013(NG)
(T. 18, U.S.C., §§ 1341,
1346, 2 and 3551 et seq.)

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTION

      At all times relevant to this Information, unless otherwise indicated:

The Relevant Entities

      1.  Arco Management Corporation ("Arco") was a real estate property management and maintenance company that managed multi-family and single-family properties for the U.S. Department of Housing and Urban Development ("HUD").  Arco managed multi-family housing developments for HUD where HUD had acquired an ownership interest in the properties after the original owners had defaulted on federally insured mortgages or where private entities owned the properties and HUD funds were involved in some way, such as in the form of federal rent subsidies for tenants under HUD's Section 8 Program.  Arco also managed single-family properties where such properties underwent rehabilitation under

HUD's Section 203(k) Program.  Both the multi-family and single-family properties are referred to collectively herein as the "HUD Properties."

2.  HUD's Section 203(k) Program allowed qualified entities to obtain federally insured mortgages to finance both the purchase and the rehabilitation of the properties.  HUD's Section 8 Program provided rent subsidies to eligible, low-income tenants, who were annually certified as being qualified recipients for such benefits.  HUD paid Section 8 benefits to many of the tenants residing at one of the HUD Properties known as Plaza Borinquen.  The New York City Housing Development Corporation ("NYCHDC") was an administrator for HUD for the Section 8 rent subsidies for the tenants at Plaza Borinquen.

The Defendant

3.  In or about and between March 1997 and November 2004, the defendant JOSEPH DRISCOLL was employed by Arco as a maintenance director at several HUD Properties.  DRISCOLL's responsibilities as maintenance director for Arco included preparing job specifications and overseeing the repair work at Arco-managed properties.  As an employee of Arco, DRISCOLL owed Arco a duty of honest services and was required to make business decisions in Arco's best interests, without regard for his own personal gain.

4.   In or about and between March 1997 and November 2004, an unindicted co-conspirator ("UIC"), an individual whose identity is known to the United States Attorney's Office, was employed by Arco as a Vice President.  As an employee of Arco, the UIC owed Arco a duty of honest services and was required to make business decisions in Arco's best interests, without regard for his own personal gain.

5.   In or about and between January 1997 and November 2004, the defendant JOSEPH DRISCOLL owned construction businesses known as Drimart Restoration, 108 Village Square, Suite 401, Somers, New York ("Drimart") and BQD Mechanical Corp., 2503 Carmel Avenue, Brewster, New York ("BQD Mechanical").

The Fraudulent Scheme

6.   In or about May or June 2000, the defendant JOSEPH DRISCOLL agreed with the UIC to rig the bidding process for the window replacement job at Plaza Borinquen (the "Plaza Borinquen job") so that the job would be given to Mostafa Contracting, Inc. ("Mostafa").  Mostafa could then hire Drimart as a sub-contractor and it would appear that competitive bids had been submitted for the Plaza Borinquen job.

7.   In or about May or June 2000, Mostafa submitted a bid of $545,000 for the Plaza Borinquen job.

8.   On or about June 13, 2000, the defendant JOSEPH DRISCOLL submitted to the UIC a phony bid for the Plaza Borinquen job, in the amount of $625,000, on behalf of Royal Construction and Roofing, Inc. ("Royal"), without permission or authority from that company.

9.   On or about June 13, 2000, the defendant JOSEPH DRISCOLL submitted to the UIC a phony bid for the Plaza Borinquen job, in the amount of $585,000, on behalf of S.C.L. Construction Corp. ("SCL"), without permission or authority from that entity.

10.   On or about June 13, 2000, pursuant to the agreement between the defendant JOSEPH DRISCOLL and the UIC to rig the bidding process for the Plaza Borinquen job, the UIC caused Arco to submit the phony Royal and SCL bids to NYCHDC along with Mostafa's bid in the amount of $545,000, without Arco's knowledge that the Royal and SCL bids were phony.

11.   In or about June or July 2000, Arco awarded the Plaza Borinquen job to Mostafa.   Thereafter, Mostafa hired Drimart as a sub-contractor.

12.   In or about and between 2001 and 2003, the defendant JOSEPH DRISCOLL, while acting as Mostafa's sub-contractor through Drimart, performed the Plaza Borinquen job.

13.   In or about and between 2001 and July 2002, Mostafa paid approximately $350,000 to Drimart for the Plaza Borinquen job.

14.   In or about and between February 2003 and September 2003, Arco paid Drimart approximately $117,000 for the Plaza Borinquen job.

15.   In or about and between December 1999 and February 2003, through checks issued by BQD Mechanical, the defendant JOSEPH DRISCOLL paid approximately $81,000 in "consulting fees" to the UIC in connection with work that Drimart and BQD Mechanical obtained on Arco jobs.  DRISCOLL caused these payments to be made to the UIC, and the UIC accepted these payments, without Arco's knowledge or approval.

### The Mail Fraud

16.   The allegations contained in paragraphs 1 through 15 are realleged and incorporated as though fully set forth in this paragraph.

17.   In or about and between 2000 and 2003, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant JOSEPH DRISCOLL, together with others, did knowingly and intentionally devise a scheme and artifice to defraud and to obtain money from Arco, HUD and NYCHDC by means of materially false and fraudulent pretenses, representations and promises and to deprive Arco of its

intangible right to the honest services of its employees, to wit: the defendant and the UIC, and for the purpose of executing such scheme and artifice, together with others, did cause to be delivered by the U.S. Postal Service or commercial interstate carrier, according to the directions thereon, the following mail matter, to wit: a letter, dated January 24, 2003, from Drimart, 108 Village Square, Suite 401, Somers, New York 10589 to the UIC, Arco Management Corporation, Two Executive Boulevard, Suffern, New York 10901, requesting payment of $117,000 for the window replacement work that was performed by Drimart at Plaza Borinquen.

(Title 18, United States Code, Sections 1341, 1346, 2 and 3551 et seq.)

_____
BENTON J. CAMPBELL
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2004R01537

FORM DBD-34

JUN. 85

No.   CR

# UNITED STATES   DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL *Division*

## THE UNITED STATES OF AMERICA

vs.

JOSEPH DRISCOLL,

Defendant.

# INFORMATION

(T. 18, U.S.C., §§ 1341, 2 and 3551 et seq. )

A true bill.

_____
                                        *Foreman*

Filed in open court this _____ day,

of _____, A.D. 19 ____

_____
                                        *Clerk*

Bail, $ _____

*AUSA MARTIN COFFEY  (718) 254-6157*